Judge Mills
delivered the Opinion of the Court.
This action was brought in the name of the present defendant in error, who declared in debt, on a judgment rendered in the State of Virginia.
The defendant below, now plaintiff, appeared, and on filing an affidavit, procured a rule on the counsel of the plaintiff below, to shew by what *190 authority, and by.who.se procurement, he prosecuted this suit.
Affidavit used on themotion for the rule.
Cause shewn by counsel in answer to the Jmle.
Knlo discharged.
Judgment for plaintiff.
Motion, fur new trial.
Decision of the circuit c<)urt.
An assisnrnsnt of error, that the court erred in overruling the motion for a new ImJ, brings before this court _ every question made in (he grounds of the motion for a new trial, (ho’ made and decided before trial.
*190 In the. affidavit, he stated that James Wright, the then plaintiff, bad long shire left Virginia and gone to Florida or some of the then Spanish dominions, and had never been heard of since, and that, from this and other circumstances, he believed l/im to he dead; and that he verily believed, that he. said Wright, had given no authority to prosecute this suit to any person; and that the person, who pretended to have an assignment of the judgment, and for whose use this suit was prosecuted, had no title thereto, and if compelled to pay the money now', he would be in danger of being compelled to repay it to James Wright or his representatives.
Oil the return of this rule, the counsel for the then plaintiff produced his license to practice law jn the courts of the Commonwealth, and evidence of his admission to practice in that court, admitted that he had not. obtained a warrant of attorney when employed in this case or any other during several years practice, and averred that it was not customary to do so, by practitioners of law in this State; and insisted that his license gave him complete authority to appear in any case, without his right tp commence or prosecute tbe suit being questioned in court at the instance of the opposite party.
The court below sustained the cause shown as good, and discharged the. rule.'
A judgment on nil dicit was then rendered, and a writ of enquiry prosecuted, and judgment rendered for the plaintiff below.
The defendant, then moved that the execution of the writ of enquiry should beset aside and anew trial granted, and among other things relied, in that mo! ion, on the supposed error in the court, in not sustaining the rule to produce the warrant of attorney, and in allowing the counsel for plaintiff below to proceed without shewing any authority to do so, from the owner of the judgment sued on.
The court overruled this motion; (he defendant below excepted spreading all this matter on record, and has prosecuted this writ of error.
It is now insisted by the defendant in error, thar *191 the errors assigned do not reach the question made on the, rule to produce authority to prosecute the suit. We think differently. It is assigned for error that the court below erred in not granting a new trial, and this point was pressed on the motion for a new trial.
If the court err in not dismissing a suit for want of authority in an attorney to ¡'VOSneuiC it, on tho re-tor-. of a inle before trial, it may be corrected after-war;! s, on a motion forr. new trial.
Ths lieth»* of uu attorney non bo.li? here mular our statute, like the license in England formerly by letter: pat ant from il.w Crown, since, tv. w'd'h us,’is only an authority to be ■employed for^parties, not to appear without warrant.
*191 If the court erml in refusing to require authority to proceed in the suit, and in permitting the plaintiff’s counsel to proceed till that was done, it was competent Tor the defendant below, with leave of the court to ask a recoiisideration of this question as a reason why the verdict, should not stam!, and to bring the counsel for the plaintiff below back to the same point, by a review of (hat question; and it was competent for the court to correct its own errors by bringing the plaintiff back to the point where his course ought to have been arrested.
It follows, therefore, that the assignment of error, questioning the decision of that court in not granting a new trial, does bring, in question every point, on which the defendant below might properly rely on that motion.
The question then presents itself — was the r.ule properly granted? and did the court err in discharging the rule, to produce authority to progress with the suit, on the production ef the genera! license of the attorney prosecuting?
It has been here insisted, that no warrant of attorney in this State is necessary, and that the license of the attorney, and the law under which it was granted supplies every thing necessary, and furnishes the attorney with full authority to proceed without question every where and at all times.
To this doctrine we cannot subscribe.
The acts of assembly directing how licences shall be granted toattornies and counsel at law, and the license granted in pursuance thereof, «lo authorise the attorney to appear and act for every party who may employ him to do so; but not to appear for every party, whether employed or not, or to appear For any party on the employment, and at the instance of a stranger, who may have no interest in the cause, either legal or equitable.
The right to be employed and appear is m.n *192 thing; this is proved by the license, and the law under which it was granted, The fact of being actually employed is another matter, and is proved by the warrant of attorney. In England, from which our jurisprudence is derived, attornies must have a general license and an admission in court; yet the warrant of attorney could not be dispensed with in cases where it was properly demanded. And the general license was not intended to reach further in this country.
Tho warrant •of attorney had originally to be given in court, afterwards in writing; now, by parol is sufficient.
The long disuse of the warrant of attorney has not repealed the law that Acquires it.
This license formerly was required to be by letters patent from the crown; but afterwards, the license and admission of attornies and counsel became a subject of statutory regulation, as it is here. Rut through these changes, the special warrant of attorney was held necessary, down to our separation from that government. Tidd’s practice, 34-04.
This warrant of attorney originally must be given in court — or rather, a party in open court must appoint his attorney, and in process of time it was done by writing en pais, and even a warrant by parol has there been held good. To regulate these warrants, statutes were enacted, some of which were in force in this country, and haie continued so since our separation, and are retained in our code, 1 Dig. L. K. 125, 126.
It has been urged that those laws are obsolete, and the long, disuse of the practice of warrants of attorney both in Virginia and this State, and indeed in other States of the Union, has been urged as a reason why these statutes, or the provisions of the common law are not in force in this country, or are become obsolete. We admit that such warrants have been seldom used for a great, length of time, and our adjudged cases are silent on the subject.
This silence is loud testimony in favor of the integrity of the profession, for when the abuses are considered which might arise without, and which are intended to be restrained by warrants of attorney, the necessity of them must have been super-ceded more by the correct practice of the profession than by any other cause. Attornies and counsel might often use the securities of others which fall into their hands, and use their names in actions,. *193 without their consent, for fraudulent purposes, and espcciiiily the judgments of others, of which any person may obtain copies who pays for them at the clerk’s offices, might often be put in suit, money coerced by them without leave of their owners.
Warrant of ° attorney was necessary to partea?in'3 fact cognizant of 9ie Otherwise hp was not bound.---
IIenc0 -U(j merits were reversed for rant in the record.---
the law—
the attorney mustbesbewerly demand>ed. m ”
These and similar practices have not been followed by practitioners, and hence warrants of attorney have been seldom demanded. But the possibility that such practices may grow op, shew the wisdom of the law in restraining them by warrants of attorney, and we do not feel ourselves at liberty to dispense with them. We cannot say that either the provisions of the common law or these statutes are not in force, for vve find no repeal.
Nor can we say that they are obsolete, while the reason for their existence remains,ami indeed our own statutory code supposes them in force, by expressly naming the warrant of attorney, and providing for cases where tiie want of it shall not reverse the judgment, 2 Dig. L K. 681—2.
if the law on this subject is still in force as we have supposed, it presents the question, whether in this case the warrant of attorney was rightfully demanded, and ought to have been shewn at the instance of the opposite party.
As between the attorney and his client, it is evidently necessary that some kind of warrant should exist. For when it is considered that a party, plaintiff, or defendant, is bound by the judgment, and if against him or for him, it is conclusive evidence thereafter, the necessity is evident to preclude iiis rights from jeopardy without his consent, by the existence of a warrant of attorney.
It was oh tins principle that the Jac&of a warrant of attorney in the record was even held sufficient to reverse it. It was because it did not appear that the party whose warrant was absent, was privy to the suit, or had consented to its prosecution.
The practice, however, under our statutes, which forbids a reversal for the lack of the warrant, proves that this was carrying the caution too far; but the existence of a fear on that subject, shews bow ten-tier the law was of individual rights, and that it *194 had provided against their being concluded without the consent of the party,
The adversary parly can demand the authority of the attorney wily where ha shews his rights are ^jeopardized without it, or that he was disturbed by beingbrought into litjgathe'eonsentof the party.
That the suit is prosecuted for the use of another in whosederivation of right to the demand there is a manifest defect, is presumption which ought to put tho ¿attorney to shew his authority. .
In this case, however, the warrant is demanded by the opposite party, and he ought to shew that his rights were jeopardized without it, or that he was disturbed by being broughtinto litigation without the consent of the man, who stood on the record as his adversary.
This we think his affidavit has done.
He shews a probability of Wright’s death, and if that is true, and the money should now be collected in his name, the recovery would be no bar to his representatives. He has shewn strong circumstances that Wright had no hand in this suit, and ]le hereafter might be in danger of another contest with Wright for the same demand, because Wright had nothing to do with this controversy, in such case, the counsel for plaintiff was bound to shew some right in those for whose benefit the suit was brought, either legal or equitable.
The suit seems to have been prosecuted for the use another, and there are assignments on the transcript of the record of the judgment filed. But no assignment thereof appears by W right to the plaintiff, or anv authority from him. The only as- *. r . . . sigmnent which is pretended to pass his title, is made by John Wright, who styles himself the administrator of Robert Wright, now deceased, who was the attorney in fact of James Wright the plaintiff.
Now the idea that the administrator of an attorney in fact can pass by assignment, the securities of the principal of his intestate, 'is so absurd, that It furnishes 'a suspicion that there has been an improper attempt to take hold of and use this Virginia judgment, without the. consent of its owner, and imposes upon the, attorney for the plaintiff, or those who are suing on the record, the necessity of exhibiting some fuvthev evidence of title, derived from the plaintiff, before he can be permitted to proceed with his suit, and of course tho court below, on the evidence, adduced on shewing causé against the rule, erred in discharging that rule.
Tlie attor^cannot be capriciously; demanded by the adversary probable he*°re tion^Sunif! made,
in an action on a judgment, the suitrecovered by the judg-' ment are a judgment itself, and ave recoverable as principal and not to be computed as damages—
But,
An om>r m adding- the osls in the damage?, instead of the debt, is not an error which defendant can assign. Mandate for the attorney of plaintiff to shew his authority, otherwise the suit tobed¡¡5-.' missed.
üaperton fot’ plaintiff; Turner for defendant.
We would not be understood as imposing upon ihe profession hardships in their management of causes, or as deciding that they were hound to gratify the party to which they were opposed, with' a sight of their authority on every capricious demand; but that when reasons are shewn why the interest of the adverse party are jeopardized by prosecuting suits without the leave or consent from the real owner of the demand, their authority ought to .be shown.
One other point made as grounds for a new trial, as the cause may progress on its return to the court below, will be noticed. It is insisted that the verdiet is for too much. The judgment for the debt is for $110, which is the precise amount of the debt mentioned in the foreign record, omitting $10 72 cents, recited in the declaration as the costs, awarded in Virginia. In this respect, the debt recovered is made less than the debt demanded, For we view the costs, which were awarded in Virginia, as part of the judgment there, and of course part of the debt, which is demanded here. But the damages awarded by the jury iu this action, are more than the amouut of interest, at the rate given in evidence to the jury. This increase is suggested to have arisen by adding in the costs in Virginia. This was placing these costs as part of the damages, when they ought to have been part of the debt.
But as the defendant was subjected to no more by this transposition of the costs, than he would lidve been, had they been placed in their proper place, the exception ought not to be held sufficient to reverse the judgment.
But on the other point, .the judgment must be reversed with costs, and .the cause be remanded with directions to retry the rule to produce authority to prosecute the suit, and if none is produced, or sufficient cause is not shewn, to dismiss the suit accordingly.